UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:14-cr-00046-TWP-DML |
| KENNETH REED Jr., | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO SUPPRESS

This matter is before the Court on Defendant Kenneth Reed's ("Mr. Reed") Motion to Suppress (Filing No. 25) and Motion for Hearing (Filing No. 27). Mr. Reed seeks to suppress any and all evidence obtained from a warrantless search of his vehicle during a routine traffic stop. He also requests a hearing to support his version of the facts. The Court finds there is no material dispute concerning the facts and the motion raises a purely legal question; therefore no evidentiary hearing is required. For the reasons set forth below the Motion to Suppress is **DENIED**. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions.

### I. FINDINGS OF FACT

On October 7, 2013, Columbus Police Lieutenant Dan Meister ("Lieutenant Meister") observed Mr. Reed disregard a traffic signal on State and Reo Street in Columbus, Indiana. Mr. Reed was driving a vehicle he borrowed from a friend. After stopping Mr. Reed, Lieutenant Meister asked for his driver's license and registration. Mr. Reed stated that he left his license at home, but gave Lieutenant Meister the name of Joshua Reed and a date of birth. Patrolman Paul Garnett ("Officer Garnett") arrived at the scene and ran the information in his computer but could not match Mr. Reed's information. Mr. Reed provided Lieutenant Meister with another year for

the date of birth. When the information again did not match up, Lieutenant Meister asked Mr. Reed to step out of the vehicle and directed him to the back of the police vehicle. Mr. Reed provided a telephone number so that the officers could contact a family member to verify his identity, but the number came back as disconnected. While at the rear of the police vehicle, Lieutenant Meister noticed that Mr. Reed had a wallet in his back pocket and asked to see it. Inside the wallet Lieutenant Meister found an Indiana Department of Correction card with the name Kenneth Reed and a photograph. The officers verified Mr. Reed's identity in the computer and Lieutenant Meister determined that Mr. Reed had been lying about his identity and that his driver's license was suspended. Lieutenant Meister placed Mr. Reed under arrest for the misdemeanor offenses of driving with a suspended license and false informing.

Following the arrest, Lieutenant Meister conducted a warrantless search inside Mr. Reed's vehicle and found a large quantity of cash and two bags with a crystal like substance, which was later determined to be crystal methamphetamine.

Mr. Reed was transported to the Columbus Police Department and was interviewed by Detective Josh McCrary ("Detective McCrary"). The interview was very brief because Mr. Reed requested to have a lawyer present. Following the interview, Detective McCrary asked Mr. Reed if there was anyone who could pick up the vehicle so that it would not be towed and Mr. Reed provided the telephone number of a female friend. The female friend informed Detective McCray that she was unable to pick up the vehicle because she was in Seymour, Indiana and she did not have a ride. Detective McCrary advised the female friend that the vehicle would be towed to Pro Tow and she could pick it up in the morning. Detective McCray then contacted Lieutenant Meister and requested that he dispatch a wrecker to pick up the vehicle.

Officer Toby Combest completed a tow form and the vehicle was towed, inventoried and impounded. (Filing No. 34-2). The Columbus Police Department maintains a departmental policy regarding the inventory of motor vehicles being towed by the department. (Filing No. 34-1). The policy includes a requirement that "all closed containers found in the vehicle shall be opened for purposes of inventory" and that "contraband or evidence discovered during the course of a motor vehicle inventory shall be processed as evidence…" (Filing No. 34-1 at ECF p.2).

Mr. Reed was charged with one-count of possession with intent to distribute 500 grams or more of mixture or substance containing methamphetamine in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(A)(viii). Mr. Reed contends the evidence seized from his vehicle should be suppressed because it was obtained during a warrantless search, thus violating the Fourth Amendment to the United States Constitution.

## II.  LEGAL STANDARD

### A. Need for a Hearing

"District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). The Government does not dispute Mr. Reed's version of the facts and Mr. Reed has not raised any disputed issue of material fact. Mr. Reed asserts that a hearing will be necessary "to establish that his vehicle was not going to be towed by the police and inventoried". However, Mr. Reed does not develop any factual scenario or provide evidence to support his contention. Rather, Mr. Reed's statement of facts agree that the vehicle was towed because Mr. Reed had no one to pick it up from the side of the road. Because there is no dispute about the material facts, no evidentiary hearing is required in this case.

B. **Fourth Amendment Standard**

Because a traffic stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the 4th Amendment- subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The products of an unconstitutional search are subject to suppression. See, e.g., *United States v. Calandra*, 414 U.S. 338, 348 (1974). When a warrantless seizure has occurred, the Government bears the burden of proving compliance with the Fourth Amendment, by a preponderance of the evidence. *United States v. Garcia–Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (citation omitted).

## III. DISCUSSION

C. **Validity of the Stop**

Other than stating that he "allegedly" disregarded a traffic signal, Mr. Reed does not challenge the validity of the traffic stop. Following the proper traffic stop of the vehicle, Lieutenant Meister properly spoke with Mr. Reed and ultimately learned that Mr. Reed's driver's license was suspended and he had given a false name and date of birth. "[A]s part of the stop, police may ask the vehicle's occupants a 'moderate number' of questions and request their identification." *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005). Based on the evidence presented, the stop of Mr. Reed's vehicle did not constitute a violation of the Fourth Amendment.

D. **Search Incident to an Arrest**

Mr. Reed argues that Lieutenant Meister did not have a valid exception to conduct a warrantless search of the vehicle in accordance to the Fourth Amendment during the routine traffic

4

stop therefore the evidence obtained from the unlawful search should be suppressed.[1] The Government does not dispute that Lieutenant Meister's search of the vehicle was a search under the Fourth Amendment; however, the Government argues that the evidence should not be suppressed because application of the exclusionary rule is not coextensive with Fourth Amendment violations.

The Court in *Arizona v. Gant*, 556 U.S. 232 (2009) provides a two-part rule that a search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within the reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'" In his written report, Lieutenant Meister indicates that his search of the vehicle was "incident to arrest." Mr. Reed states, and the government agrees, that Mr. Reed was outside his vehicle for a significant period of time when Lieutenant Meister conducted the warrantless search. The first prong does not apply. Further, the Government concedes that Lieutenant Meister did not have reasonable suspicion to believe that Mr. Reed's vehicle would have contained evidence from a relevant crime at the time of the arrest. Therefore, the second prong does not apply and the exception of a search incident to a lawful arrest does not apply here.

The Government argues that even if the Court finds that Lieutenant Meister's search violated the Fourth Amendment, the evidence should not be automatically excluded. The Government asserts that the Fourth Amendment does not expressly preclude the use of evidence in violation of its commands; rather, the exclusionary rule is a separately created judicial remedy intended to safeguard the Fourth Amendment rights through the rule's deterrent effect on law enforcement officers. The Government's argument is misplaced. As Mr. Reed contends, searches

---

[1] Both parties agree that Mr. Reed had an expectation of privacy even though he was borrowing a friend's car.

5

conducted outside the judicial process without approval from a judge are per-se unreasonable under the Fourth Amendment and subject to specifically established and well-delineated exceptions. See *Katz v. United States*, 389 U.S. 347, 357 (1967). The exception invoked by Lieutenant Meister at the time of the search was a search incident to a lawful arrest. The police are authorized to search a vehicle "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. Under these circumstances, Lieutenant Meister failed to comply with a specifically delineated exception of a search incident to a lawful arrest, a judicial remedy that limits the scope of the law enforcement's warrantless search.

The Government cites *United States v. Leon*, 468 U.S. 897 (1984) to argue in favor of applying the costs and deterrence analysis of the exclusionary rule to this case. In *Leon*, police officers were acting in good faith when they conducted a search pursuant to a warrant signed by a magistrate that was later determined to lack probable cause. The court stated that "suppression of evidence is ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." The cost-benefit analysis of *Leon* is misplaced here. Unlike *Leon*, Lieutenant Meister was exceeding the scope of a warrantless search. Therefore, the warrantless search of Mr. Reed's vehicle was a violation of Mr. Reed's Fourth Amendment rights and evidence seized during the search would be suppressed; however, the evidence will not be excluded because the inevitable discovery doctrine applies to this case.

E.  **Inevitable Discovery Doctrine**

The Government asserts that the items seized during the search incident to an arrest would have inevitably been discovered during an inventory search of the vehicle. The Government further argues that the vehicle was properly impounded and that an inventory search of the vehicle would

have been lawful under the Columbus Police Department Policy. In his brief, Mr. Reed argues that the inevitable discovery doctrine should not and does not apply in this case, but cites no legal authority and provides no further analysis to support his argument.

"Under the discovery doctrine, if the Government can establish that the evidence at issue, even though unlawfully obtained, would have inevitably been discovered through lawful means, then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be admitted. *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984). The Government must show a chain of events that would have led to a warrant or some other justification independent of the unlawful search. *Id.* In determining the legality of an inventory search, the decision to impound (the "seizure") is properly analyzed as distinct from the decision to inventory (the "search"). *Cartwright*, 630 F.3d at 614 (citing *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996)).

**(1) Decision to impound the vehicle was proper**

The Government argues that when Mr. Reed was arrested, he was by himself and no one was available to remove the vehicle from the street, thus authorizing the impoundment of Mr. Reed's vehicle. *See Duguay*, 93 F.3d at 353 ("The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots"). Further, "[i]mpoundments by the police may be in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *Id.* at 352 (citations omitted).

The Government relies on cases where the officers conducted a warrantless inventory search of the vehicle prior to the vehicle being impounded, or where police departments follow a policy for towing vehicles following any arrest. *See United States v. Velarde*, 903 F.2d 1163 (7th Cir. 2009) ("Pursuant to established police procedure, [the officer] proceeded to conduct an inventory search of the vehicle before having it towed off the highway to the police station . . . [W]hen an inventory search is carried out "in accordance with standard procedures in the local police department, [it] . . . tend[s] to ensure that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function"); *see Cartwright*, 630 F.3d at 614-15 ("The policy sets forth the circumstances under which the police may tow a car, establishes the procedures officers must follow in calling for a tow, requires an inventory search whenever an officer takes a vehicle into custody, and specifically forbids inventory searches "motivated by an officer's desire to investigate and seize evidence of a criminal act").

Unlike the cited cases, Mr. Reed and the Government characterize Lieutenant Meister's search as "incident to an arrest," rather than an inventory search. The Government provided no policy of towing vehicles after an arrest. However, "[t]he inevitable discovery doctrine holds that even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means." *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010).

Here, Mr. Reed was arrested for driving with a suspended license and false informing and was placed in the police vehicle while Lieutenant Meister conducted an unlawful search incident to an arrest that led to the discovery of methamphetamine. Mr. Reed was then taken to the police department to be questioned by Detective McCrary concerning the illegal drugs. Even if he were not taken to be questioned regarding the methamphetamine, Mr. Reed would not have been free to

leave in the vehicle because he did not have a valid driver's license and he was under arrest for both the driving offense and false informing. Detective McCrary eventually asked if he knew someone who could pick up the vehicle. When Mr. Reed gave Detective McCrary the contact information of a friend, Detective McCrary contacted the person and found that she was not able to pick up the vehicle. Mr. Reed does not dispute that no one was available to pick up the vehicle. The Columbus Police Department would not have allowed Mr. Reed's vehicle to stay on the side of the road for public safety and the vehicle was lawfully impounded. The vehicle would have been towed and the methamphetamine would have been seized during the inventory search. *See Stotler*, 591 F.3d at 940 ("the arresting officers would not have allowed the truck to just sit on the street after [the defendant] was carted away. What they would have done, in all likelihood, was impound the truck and have it towed away"). Thus, the Government has established by preponderance of the evidence that impoundment of the vehicle was proper.

**(2) Inventory of the vehicle was lawful**

The Government contends that the Columbus Police Department would have performed an inventory search pursuant to impoundment of the vehicle according to departmental policy. An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *Cartwright*, 630 F.3d at 614. A routine inventory of an impounded vehicle is typically done "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

The first prong is met because Mr. Reed was lawfully arrested. The second prong is also met because the Columbus Police Department has established inventory procedures. The Columbus Police Department maintains a Motor Vehicle Inventory Policy. The purpose of the policy is "to provide Columbus Police Department officers with guidelines for determining when and how a motor vehicle inventory should be conducted." (Filing No. 34-1, at ECF p. 2). It further states that the Columbus Police Department "shall conduct a motor vehicle inventory as a matter of routine when: 1) The vehicle has been lawfully impounded pursuant to an arrest of the driver . . ." (Filing No. 34-1, at ECF p. 2). The inventory may "extend to all areas of the vehicle in which personal property or hazardous materials may be reasonably found . . . [and a]ll closed containers found in the vehicle shall be opened for purposes of inventory." (Filing No. 34-1, at ECF p. 3). The Government has demonstrated by a preponderance of the evidence that the unlawfully obtained evidence from the warrantless search would have been discoverable during the inventory search following Mr. Reed's lawful arrest.

### F. CONCLUSION

Although the Government seized evidence during the warrantless search in violation of Mr. Reed's Fourth Amendment, the Government has proven by preponderance of the evidence that the inevitable discovery doctrine applied to this case. The methamphetamine and cash seized during the warrantless search would have inevitably been discovered when the vehicle was lawfully impounded and inventoried pursuant to the Columbus Police Department policy. Accordingly, Mr. Reed's Motion to Suppress (Filing No. 25) is **DENIED** as to the evidence found during the search of his vehicle. Moreover, no factual dispute exists between the parties; therefore, this case does not require an evidentiary hearing and Mr. Reed's Motion for Evidentiary Hearing (Filing No. 27) is **DENIED**.

**SO ORDERED.**

Date: 3/12/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bradley Aaron Johnson
brad@bradjohnsonlaw.com

Matthew J. Lasher
OFFICE OF THE UNITED STATES ATTORNEY
matthew.lasher@usdoj.gov

William Lance McCoskey
OFFICE OF THE UNITED STATES ATTORNEY
william.mccoskey@usdoj.gov